## NASHVILLE LUMBER COMPANY *v.* THORNTON.

### Opinion delivered December 4, 1911

1. MASTER AND SERVANT—DUTY OF SERVANT TO OBEY RULE—INSTRUC-
   TION.—Instructions which deny a servant's right to recover on account
   of the servant having violated a rule or instruction of the master were
   properly refused where they failed to leave it to the jury to determine
   whether the servant had knowledge of such rule or instruction.
   (Page 287.)

2. SAME—ASSUMED RISK.—Although a servant had complained of the
   manner in which the chains on a car load of logs was fastened, and
   his foreman had promised to have the men stop fastening the logs in
   that manner, yet, when a few days later the servant saw that a car
   load of logs was fastened in the same manner, and, knowing the danger,
   undertook to unfasten them, whereupon the logs rolled down upon and
   injured him, he assumed the risk of such injury.  (Page 288.)

Appeal from Howard Circuit Court; *Jeff T. Cowling,*
Judge; reversed.

#### STATEMENT BY THE COURT.

Appellants were corporations engaged in the lumber bus-
iness at Nashville, Arkansas.  They maintained a log train,
by which they transported logs on cars to their mill.  Appellee
was a conductor and brakeman on such train.  It was his duty
to place cars, after they were loaded with logs, on appellants'
siding at their mill pond, and, when so placed, to unload the
logs from the cars into the pond.  To facilitate the unloading,
one side of the track at the pond was higher than the other, so
as to allow the logs to be rolled off into the pond.  When the
logs were loaded on the cars in the woods, they were secured by
log chains wrapped around the logs and the cars, and the
ends of the chains were fastened by placing one link through
another link and running a hook through, so as to fasten them
together.  When the logs were placed on the siding to be un-
loaded, appellee unloaded them by standing at the end of the
car and knocking the hook out.  This was done by a cant hook,
which appellee used to knock the toggle loose while standing at
the end of the car.  Three or four days before appellee was
injured, he discovered a car loaded with logs in a different way
from the usual.  The toggle on this car load of logs was fastened
by a nut.  The nut was on one end of the bolt, and the head was
on the other end, and this held the two chains together.  To
get the toggle loose when fastened in this way, appellee had to

take his cant hook and pull the slack out of the chain and unscrew the nut, and to do so he had to go in between the logs and the pond. When the toggle was fastened in this way, it was dangerous. When appellee discovered the toggle fastened in this way, he spoke to the president and manager of the mill about it. To use his language, he said: "Mr. Webfer, these toggles oughn't to be undone this way. They are dangerous." Webfer replied: "Yes, I will have them to stop it." "He told me to go ahead with reference to that one, and he would stop it. I didn't observe any more of the chains fastened with those bolts and screws until the day I got hurt." On the day of appellee's injury, he was unloading a car of logs that was fastened with the bolt in the manner above indicated. He says that it was necessary for him to go in there to unscrew that nut in order to get it off; it wouldn't have been necessary if the car had been loaded in the usual and customary manner. When he got the nut near about off, having pulled the logs up with his cant hook to slacken the chain, something nearly fell off; the chain slipped, and the logs rolled down from the top of the car, some of them striking appellee on his hand and left hip and injuring him severely.

Appellee had been working for appellants in the capacity indicated for about six or eight months. He stated that Webfer, the manager, under whose direction he worked, had told him, just a short time before, to go in there and unload them, and that when he went in he was obeying orders. He said if Webfer had not told him to go in he wouldn't have gone in there. There was no testimony to show that Webfer knew how the logs that injured appellee were fastened. Appellee stated that he did not think there was so much danger in going in there and unfastening the car. He said sometimes when he unfastened the toggle chains the logs on top of the toggle chains fell off; he knew that to be a fact; he had seen them fall off. He was asked if he didn't know that it was a dangerous place for him to occupy the position that he was occupying when he got hurt, and he answered, "Why, no; if I had known I was going to get hurt, I wouldn't have gone in there. I didn't think it was any more dangerous than anything else about railroading, because all work around the railroad is dangerous. I knew that." These are substantially the facts

as stated by appellee upon which he bases his suit against the appellants for personal injuries.

The defense set up by appellants was contributory negligence and assumed risk. There was testimony on behalf of the appellants tending to show that the car load of logs which appellee claimed injured him were loaded in the usual manner, and that the toggle chains fastening the logs were in perfect order; that no bolts were used except the fastenings that were usually used in loading cars, with the ordinary toggle chains. The testimony for appellants also tended to show that the log that rolled off of the car and injured appellee was not fastened by toggle chains, but was only thrown in on top of the fastening in order to take slack out of the chain and hold all the other logs in place while they were transported from the woods to the pond, and that appellee could have seen it if he had looked; that in loosening the toggle chains in the manner in which appellee undertook to do the logs would roll from the top of the car on to the ground. It was further shown on behalf of appellants that appellee never at any time requested Webfer, the foreman or any one else to have the car moved out upon the flat track for the purpose of unfastening the toggle chains, neither was he directed by Webfer, or any one else, to unload the car of logs in the manner in which he did. The witness further testified on behalf of appellants that the usual, customary and only safe way of unloading the logs at the pond was to stand at the end of the car of logs and either knock the toggle chain loose or put a snatch chain on and jerk the toggle chains so that they would come loose; no other way would be safe in unloading cars, and the appellee well knew this fact. It was further shown on behalf of appellants that if any car or cars of logs were brought in from the woods to be unloaded, fastened in any other manner except with toggle chains, the unloader was directed and instructed not to undertake to unload the cars while on the inclined track, but to let them remain until they were put off on the flat track before the toggle chains were loosened. This fact was well known to appellee, as he had been instructed with reference to that duty.

The court gave instructions at the request of appellee to which no objection is urged by the appellants. Appellants

asked, among others, the following prayers, which the court refused, towit:

"No. 10. You are instructed that if you believe from the evidence that the defendant company had promulgated a rule for the safety of its servants, or had instructed or notified the plaintiff as to his duty in unloading logs, and that the plaintiff was injured in violation of the rule, and on account of such violation, then plaintiff would be guilty of contributory negligence, and your verdict will be for the defendant.

"No. 11. You are instructed that if you believe from the evidence that the plaintiff violated the instructions or rule of the defendant company in unloading the logs, and was injured, then he can not recover damages from the defendant company."

There was a verdict in favor of the plaintiff in the sum of $2,500; judgment was entered for that sum, and this appeal has been duly prosecuted.

*Sain & Sain, T. D. Wynne* and *T. D. Crawford,* for appellant

1. There was testimony on which to base instructions 10 and 11, requested by appellant, and the court erred in refusing them. Violation of a rule of the master promulgated for the servant's protection is negligence *per se.* 85 Ark. 237.

2. The court should have directed a verdict for the defendant. By his own testimony, it is shown that appellee knew, when he undertook to unfasten the logs, that there was danger of their falling upon him if he got between the car and the pond, and he was certainly negligent in going there alone and undertaking to unfasten the chain. The danger was obvious and patent, and he adopted a dangerous method when he might have chosen a safe way to do the work. 1 Labatt, Master & Servant, 840; 98 Ark. 462; 86 Ark. 65; 41 Ark. 549; 76 Ark. 436. His own negligence was the proximate cause of the injury. 90 Ark. 21; 86 Ark. 289. He assumed the risk of the logs falling upon him. 56 Ark. 232; 68 Ark. 316; 65 Ark. 98; 57 Ark. 76; 77 Ark. 375.

*W. P. Feazel,* for appellee.

1. Instructions 10 and 11 were properly refused because there was no legal evidence that appellant had ever adopted any rules regulating the manner of unloading logs. The

testimony given was not competent to establish a written or printed rule because in that case the rule itself would be the best evidence of what it contained.   71 Ark. 174; 70 Ark. 364. If a rule is not in writing, it must be shown to have been generally known to the class of employees it was intended to safeguard. Not only so, but also that it was prescribed by the master himself, and that he required it to be obeyed.   Mere supposition or understanding of employees is not competent to prove the existence of a rule.   Labatt, Master & Servant, § 213a; 49 Minn. 168; 48 N. W. 783.

2.   Appellee   did   not   assume   the   risk   because   he observed a car loaded in the same way three or four days before, and complained to the superintendent about it, and the latter directed him to go on with the work, showed him how to unfasten the toggle chains, and assured him that this manner of securing the toggle chains should be stopped.   Relying on this promise, appellee continued with the work, and when he found this car with the chains fastened as the former had been, he attempted to unfasten them in the manner shown him by the superintendent.   90 Ark. 565.   In order to convict appellee of contributory negligence, the testimony must show that the danger was so obvious and glaring that no man of ordinary prudence would have undertaken to do the work. 90 Ark. 565; 98 Ark. 211.   That the injured person was aware of the danger is not sufficient to convict him of contributory negligence as a matter of law.   It is a question for the jury. 29 Cyc. 640; 87 Ark. 443; 138 S. W. (Ark.) 469; 87 Ark. 443.

WOOD, J., (after stating the facts).   The court did not err in refusing prayers for instructions numbered 10 and 11.   There was no evidence to show that the appellant had promulgated a rule for the safety of its servants as to the manner of unfastening the toggle chains.   Even if a rule had been promulgated upon the subject, the prayers for instructions were defective because they did not leave it to the jury to determine whether or not the appellee had knowledge of such a rule, and, under the evidence, this was a disputed question of fact, as appellee himself testified that he was never directed by any one not to undertake to unload the cars while on the incline when they were fastened in an unusual manner;   that he never knew of any instructions to any of the servants to that effect.   Contrib-

utory negligence, under the evidence, was a question for the jury.

A majority of the judges are of the opinion that the undisputed evidence shows that appellee, in undertaking to unfasten the chains around the car load of logs in the manner indicated by his testimony, assumed the risk of the danger in so doing. The promise of the master to assume the risk refers to the particular car of logs that was unloaded by appellee three or four days before his injury, and not to the manner of the fastening of the logs on the particular car by which appellee was injured. Appellee had no right, according to his own testimony, to rely upon any promise of the master to repair the fastenings on any future car, for the master specifically limited his assumption of the risk to the car that appellee was unloading when he called the master's attention to its defective condition. If the master had said generally for the servant to go ahead and he would stop it, the case would have been different; but the master only promised with reference to "that one," *i. e.*, the particular car that the appellee was then unloading.

The appellee himself testifies that he saw, four or five minutes before he was injured, that the car load of logs that injured him was fastened in the same manner as the car to which he had called attention three or four days before, and that the master had not corrected that manner of fastening the logs; that "he hadn't lived up to his promise." This testimony of appellee shows that he knew that the promise of the master to repair had come to an end and had not been fulfilled, and that he, appellee, was no longer relying upon same. Since the master only told appellee "to go ahead with reference to that one," appellee, by undertaking to unfasten another and future car when he saw it to be dangerous to do so, assumed the risk.

The verdict is without evidence to sustain it. The judgment is therefore reversed, and the cause is remanded for a new trial.

KIRBY, J., concurs in the judgment; FRAUENTHAL, J., dissents.